**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 10-143-DLB**

**JOEL SCHILLING, ET AL.**                                                          **PLAINTIFFS**

**vs.**                              **MEMORANDUM OPINION AND ORDER**

**KENTON COUNTY, KENTUCKY, ET AL.**                                **DEFENDANTS**

\*       \*       \*       \*       \*       \*       \*

Plaintiffs Joel Schilling, Charles Schulker, and John Telek commenced this § 1983 action against Kenton County, Kentucky, Kenton County Fiscal Court, Terry Carl, Deputy Baldwin, Southern Health Partners, Inc. (SHP), Dr. Ron Waldridge, Nurse Shawnee as well as various unnamed Defendants, alleging due process and Eighth Amendment violations resulting from Kenton County Detention Center (KCDC)'s "continuing practice" and "policy" of denying inmates adequate medical care while incarcerated. (Doc. # 1, ¶¶ 108-11). Plaintiffs also advance several statutory claims arising under state law and a state law claim for negligence. (Doc. # 1, ¶¶ 112-15). Plaintiffs filed this lawsuit as a purported class action on behalf of themselves and those similarly situated.

The matter is before the Court on Defendants Kenton County, Kentucky, Kenton County Fiscal Court, Terry Carl and Deputy Baldwin's Motion to Dismiss Class Allegations and Claims (Doc. # 8). Defendants moved for dismissal of all class allegations and claims pursuant to Rule 12(b)(6) for failure to state a claim, specifically on the basis that Plaintiffs' proposed putative class is an impermissible "fail-safe" class. The motion having been fully briefed (Docs. # 9, 11), the matter is now ripe for review. For the reasons set forth below,

and because Plaintiffs fail to propose a viable putative class that complies with Rule 23, Defendants' motion to dismiss Plaintiffs' class allegations (Doc. # 8) is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts, which have been gleaned solely from Plaintiffs' Complaint, are accepted as true for purposes of addressing Defendants' motion to dismiss. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). This lawsuit was brought by Plaintiffs Joel Schilling, Charles Schulker, and John Telek, all of whom were former inmates at KCDC. Plaintiffs allege they were denied adequate medical care while incarcerated in violation of their Eighth Amendment right to be free from cruel and unusual punishment and in violation of their Fourteenth Amendment right to due process. Plaintiffs assert this denial was part of a systemic prison policy by KCDC and SHP to endorse the deprivation of necessary medical care for inmates. (Doc. #1, ¶ 43). In filing this lawsuit on behalf of themselves and those similarly situated, Plaintiffs define the proposed putative class the following way:

> [A]ll individuals who, while incarcerated at KCDC (both prior to and after an adjudication of guilt), have been denied medical attention for their serious medical needs, and appropriate and necessary medication prescribed by recognized medical authorities, as a result of Defendants' neglect and deliberate indifference. The Class also consists of all individuals who, while incarcerated at KCDC (both prior to and after an adjudication of guilt), have been subjected to intentional physical and mental abuse by Defendants in violation of the Eighth Amendment prohibitions on cruel and unusual punishments, and the Fourteenth Amendment's guarantee of due process and liberty.

(Doc. # 1, ¶ 5). Joel Schilling, Charles Schulker, and John Telek are the representative plaintiffs named in the Complaint, each of whom spent various weekends incarcerated at KCDC during 2009 and 2010.

**Plaintiff Joel Schilling**

Plaintiff Joel Schilling alleges that in April 2010 he suffered from an untreated enterovirus infection during one of three weekends he served time at KCDC for delinquent child support.  (Doc. # 1, ¶ 44).  On April 2, 2010, seven days before Schilling was to report for his second weekend of incarceration, he fell and injured himself which required the assistance of his primary care physician the following day.  (Doc. # 1, ¶ 45).  Schilling self-reported to KCDC on Friday, April 9, 2010, and through Sunday of that weekend he alleges that his complaints of worsening pain were ignored and that KCDC failed to provide him his previously prescribed pain medication in violation of his constitutional rights.  (Doc. #1, ¶¶ 49-52).

A week after Schilling's injury, his primary care doctor prescribed the pain reliever Midrin for his enterovirus infection.  (Doc. # 1, ¶ 46).  Prior to self-reporting, Schilling called to  confirm that he would be allowed his pain medication while incarcerated, to which he received conflicting responses.  After his first call, he was told he could bring the Midrin with him to the facility.  During a later call that same day, he was told the medication would not be allowed.  (Doc. # 1, ¶ 48).  Schilling took one last dose of Midrin before self-reporting to KCDC at 6:00 p.m. on April 9, 2010.  (Doc. # 1, ¶ 48).

Just hours after reporting, Schilling felt ill and requested to see a nurse from the infirmary after he vomited up his dinner meal.  (Doc. # 1, ¶ 49).  Allegedly unattended to all night, Schilling was called to report to the medical department the next morning.  The nurse confirmed Schilling's temperature was over 100 degrees for which he received "generic Tylenol."  (Doc. # 1, ¶ 53).  Schilling again vomited after lunch on Saturday, April 10, 2010.

Later in the day, Schilling's fiancé brought his Midrin and Symbicort inhaler to KCDC. (Doc. # 1, ¶ 54). At 5:00 p.m. on Saturday he was given his Symbicort inhaler, but the nurses refused to administer his Midrin. (Doc. # 1, ¶ 57). At dinner, Schilling was unable to keep down his meal, and he alleges the medical department again ignored his medical needs and allowed him to spend "another sleepless night" in KCDC. (Doc. # 1, ¶ 59). On Sunday, Schilling was given his inhaler, but was denied his Midrin. He refused to eat both his breakfast and lunch meals given his inability to keep down food during the previous two days. Once discharged, Schilling was "able to receive adequate healthcare outside" KCDC and fully recovered from his enterovirus infection . (Doc. # 1, ¶ 62).

**Plaintiff Charles Schulker**

Plaintiff Charles Schulker served two and a half days at KCDC from February 17, 2010 through February 19, 2010 after his arrest on domestic violence charges. (Doc. # 1, ¶ 65). During his transport to KCDC after his arrest, Schulker attempted to jump out of the moving police vehicle. (Doc. # 1, ¶ 65). Given his history of suicidal ideation, he was brought to St. Elizabeth North's emergency room for treatment. Schulker was later discharged to police custody with assurances to the hospital's medical staff that he would remain on suicide watch while incarcerated. (Doc. # 1, ¶ 66).

At the time of his detention, Schulker was a severe diabetic and suffered from a myriad of physical ailments. (Doc. # 1, ¶ 63). He alleges that while incarcerated he was denied his anti-depressive medication, his prescribed number of insulin shots, and developed a staph infection from sitting naked on a concrete floor while on suicide watch. (Doc. # 1, ¶¶ 67-68). Schulker asserts, moreover, that he was seen by a medical professional and received his insulin shots only once a day despite his need for three shots

4

daily. (Doc. # 67). He contends his repeated requests for medication and treatment went unanswered in violation of his constitutional rights. (Doc. # 1, ¶ 68).

### **Plaintiff John Telek**

Plaintiff John Telek was required to spend his weekends in August 2009 incarcerated at KCDC. (Doc. # 1, ¶ 70). Telek is a type 1 diabetic which, in his case, requires insulin shots before every meal and before going to sleep at night. (Doc. # 1, ¶ 70). Telek alleges that despite need for insulin four times daily, the medical staff at KCDC would monitor inmates sugar levels and administer insulin only twice a day–once in the morning and once in the evening. (Doc. # 1, ¶¶ 73, 77).

Prior to his incarceration, Telek had his physician send his insulin prescription with instructions to the KCDC facility. (Doc. # 1, ¶ 70). Despite these instructions, Telek alleges that he was not properly treated while incarcerated. For instance, he made repeated requests to the medical staff that he receive his insulin shots on a more regular basis; his requests were denied each time. (Doc. # 1, ¶¶ 73, 75, 77, 82-84, 86-90, 92-93, 98, 103, 105). After serving his first two weekends at KCDC, Telek sent an email to Defendant Terry Carl describing the lack of appropriate medical care he was subjected to while incarcerated. (Doc. # 1, ¶ 94). His email requested that Carl direct his medical staff to "follow my doctor's instruction on management of my diabetes during the remaining weekends I have to spend in your facility." (Doc. # 1, ¶ 94).

In the subsequent weekends Telek spent at KCDC he claims that he continued to receive the same deficient care. He was not allowed to check his blood sugar more than twice daily and he continued to receive Lantus insulin rather than his prescribed NovaLog

insulin.[1]   (Doc. # 1, ¶ 96). During Telek's remaining weekends at KCDC, his blood sugar would pendulum swing between soaring and crashing; events Telek believed could have easily led him to a diabetic coma.  (Doc. # 1, ¶¶ 94-106).

In essence, Plaintiffs believe KCDC has a systematic policy of providing inadequate medical care to inmates in violation of their constitutional rights.   (Doc. # 1, ¶ 9). Accordingly, against Defendants, Plaintiffs assert a § 1983 claim for unlawful policy or custom premised on a theory of inadequate medical treatment and failure to properly train deputy jailers to attend to inmates medical needs.  (Doc. # 1, ¶¶ 17, 109).  Morever, Plaintiffs claim that Defendants were and continue to be grossly negligent in the level of care KCDC provides its inmates, and in so doing, have violated a variety of state regulations and statutes.  (Doc. # 1, ¶¶ 113-15).  Plaintiffs claimed constitutional and statutory violations as well as their claim of negligence are alleged as a purported class action.  Defendants seek to dismiss Plaintiffs' class allegations as an impermissible fail-safe class.  For the reasons that follow, and because  Defendants' argument is well-taken, all class allegations and claims will be dismissed in their entirety.

## II.    ANALYSIS

### A.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of Plaintiffs' complaint.  Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551

---

[1]Telek received NovaLog during his last incarceration at the end of August, which is his doctor-prescribed insulin.  (Doc. # 1, ¶ 99).

U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted). The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Essentially, the pleading standard Rule 8 announces does not require exhaustive factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Defendants here filed a motion to dismiss that essentially challenges class certification based solely on the allegations in the complaint. In such a situation, the standard of review is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6). *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010) (court granted defendants' motion to strike class allegations from the

plaintiff's complaint applying a Rule 12(b)(6) standard).  The moving party has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove.  *Id.*; *see also Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991).  Defendants' motion to dismiss class allegations is therefore akin to a preemtive motion to deny class certification; it is preemtive to the extent that discovery on class certification has not yet commenced.

Although courts generally defer ruling on class certification until discovery on the certification issue is complete and the plaintiff has moved for class certification, "nothing in Rule 23 prevents a defendant from attempting to preemptively deny certification on the grounds that the prerequisites of Rule 23(a) and (b) can never be satisfied."  *Jimenez*, 2010 WL 3623176, at *2; *see Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2007) ("Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.").  Regardless of who raises the certification issue, the analysis must begin and end with "a rigorous analysis into whether the prerequisites of Rule 23 are met." *American Med. Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996) (quotations omitted); *see Thomas v. Moore USA, Inc.*, 194 F.R.D. 595, 597 (S.D. Ohio 1999)).  If Plaintiffs are unable to establish even just one of the prerequisites of subdivisions (a) or (b), the class allegations must be dismissed.  *American Med. Sys.*, 75 F.3d at  1079.

**B.    Rule 23**

A class action may not be approved simply "by virtue of its designation as such in the pleadings."  *Id.*  A plaintiff seeking to certify a class must meet all four requirements of Rule

23(a) and one of the requirements of Rule 23(b). Rule 23(a) identifies four threshold requirements for class certification commonly referred to as numerosity, commonality, typicality, and adequacy of representation, which means (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the named representatives are typical of the claims and defenses of the entire class; and (4) the named representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23. An adequate basis for each prerequisite must be pled and supported by the facts. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).

Rule 23(b)(1) certification is appropriate if the prosecution of individual actions could result in inconsistent or varying judgments. Rule 23(b)(2) permits certification for injunctive and declaratory relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class." And, class certification is appropriate under Rule 23(b)(3) if there are questions of law and fact common to the members that predominate over any questions affecting individual members, provided the class action is the most appropriate vehicle for litigating the claims presented. Fed. R. Civ. P. 23; *see Bremiller v. Cleveland Psychiatric Inst.*, 879 F. Supp. 782, 797 (N.D. Ohio 1995).

### i.      Class Definition

Despite the absence of an explicit dictate, Rule 23(a) inherently requires that a class be sufficiently definite "so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760 (3d. ed.). Accordingly, "[b]efore delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether

a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Chaz Concrete Co., LLC v. Codell*, No. 3:03-52, 2006 WL 2453302 (E.D. Ky. Aug. 23, 2006) (citing *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004)).

Although unique to each case, important elements that form the contour of a putative class are: (1) identification of a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) an order defining the class such that its membership may be ascertained in some objective manner. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (discussing membership in a proposed class); *Garrish v. United Auto., Aerospace, & Agric. Implement Workers*, 149 F. Supp. 2d 326, 331 (E.D. Mich. 2001). The class definition should avoid subjective standards such as the plaintiff's state of mind or terms that depend on a merits adjudication. A class definition is therefore too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself. *Catanzano v. Dowling*, 847 F. Supp. 1070, 1078-79 (W.D.N.Y. 1994).

Here, Defendants' assert that Plaintiffs' proposed class definition is impermissible in that it creates a fail-safe class. A fail-safe class is "defined by the merits of [the plaintiffs] legal claims, and [is] therefore unascertainable prior to a finding of liability in the plaintiffs' favor." *Velazquez v. HSBC Finance Corp.*, No. 08-4592, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009). Once it is established that a potential class member will not prevail against the defendant, the member drops from the class. *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 735 (9th Cir. 2010). A fail-safe class is inherently deficient in that it "precludes membership unless the liability of the defendant is established." *Id.* at 736. Defining class

membership this way is "palpably unfair to the defendant, and is also unmanageable" for obvious reasons; not the least which includes Defendants' inability to provide class notice pursuant to Rule 23(c). *Id.* Plaintiffs argue, however, that the proposed putative class is sufficiently definite, asserting that the definition as proposed does not require resolution of the individual merits of a claim for a determination of class membership. (Doc. # 9 at 7). Moreover, Plaintiffs argue that all Rule 23(a) prerequisites are satisfied and the claims as alleged fall within the ambit of all three Rule 23(b) categories. (Doc. # 9 at 17-20). Contrary to Plaintiffs' assertion, the class definition as proposed fails to comply with Rule 23(a).

In *Turner v. Grant County Detention Center*, No. 05-148-DLB, 2008 WL 821895, at *9 (E.D. Ky. March 26, 2008), this Court denied certification of a civil rights class where the proposed definition required a merits-based inquiry to determine membership and was too broad to render a sufficiently definite class. Because plaintiffs' proposed definition would have required "an assessment of [an inmate's] circumstances of incarceration," such as whether the detention center should have had a policy in place to protect inmates from the particular harm each suffered, this Court rejected it as unworkable. *Id.*

Similarly, Plaintiffs' proposed class definition is fatally flawed because the Court cannot determine its individual members without reviewing the evidence relative to each KCDC inmates' incarceration, which would amount to a merits-based inquiry of each individual's claim. *Kissling v. Ohio Cas. Ins. Co.*, No. 5:10-22-JMH, 2010 WL 1978862, at *3 (E.D. Ky. May 14, 2010) (court granted defendants' motion to dismiss class allegations where extensive factual inquiry would be required to determine the individual class members ultimately concluding that a "fail-safe class is prohibited."); *Brashear v. Perry Cnty.*, No. 6:06-143-DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007) ("Where extensive factual

inquiries are required to determine whether individuals are members of a proposed class, class certification is likely improper.").

Plaintiffs in this case define the class as consisting of individuals who while incarcerated were "subjected to intentional physical and mental abuse by Defendants in violation of the Eighth Amendment ... and the Fourteenth Amendment" and were denied "appropriate and necessary" medical care as a "result of Defendants' neglect and deliberate indifference." (Doc. # 1, ¶ 5). This proposed definition improperly requires the Court to make a legal determination that certain inmates at KCDC were deprived of constitutionally adequate medical care or subjected to physical and mental abuse in violation of their constitutional rights, which is impossible to do without reference to the type of deficient care each individual may have received or the type of abuse each individual may have endured. *See Chaffee v. Johnson*, 229 F. Supp. 445, 448 (S.D. Miss. 1964) (In denying class certification the court explained "[t]he vague and indefinite description of the purported class depends upon the state of mind of a particular individual, rendering it difficult, if not impossible, to determine whether any given individual is within ... the alleged class.").

Notably, this Court denied class certification in a case virtually indistinguishable from the one here. In *Holt v. Campbell County*, No. 2:09-cv-82-WOB, Judge Bertelsman denied class certification where Plaintiffs' proposed a class of Campbell County Detention Center inmates who were "denied medical attention for their serious medical needs and appropriate and necessary medication prescribed by recognized medical authorities as a result of Defendants' neglect and deliberate indifference." Almost identical in its definition, Judge Bertelsman rejected certification of this class relying on a previous opinion wherein he determined the discrete factual circumstances relevant to each potential member precluded

satisfaction of Rule 23's commonality and typicality requirements.

Plaintiffs argue that Judge Bertelsman's analysis in *Holt* was flawed because he framed the case as a mass tort suit rather than a police misconduct class action. (Doc. # 9 at 7). Plaintiffs cite several purportedly analogous cases that certified civil rights class actions; however, the cases cited define class certification on the basis of very *specific* policies. For instance, a district court approved class certification for a group of female pre-arraignment detainees subjected to strip searches and visual body cavity inspections at Suffolk County Jail. *Mack v. Suffolk Cnty*, 191 F.R.D. 16, 23 (D. Mass. 2000). Although the defendants in *Mack* argued that typicality and commonality requirements were not satisfied because each class member was arrested at different times and for different reasons, the Court rejected this argument, finding that the detainees' action was premised on a common legal theory: whether the blanket strip search conducted on each woman was unconstitutional.

The case before this court is distinguishable from *Mack* and the other cases cited by Plaintiffs. The *Mack* plaintiffs identified a sufficiently specific and discrete event–a pre-arraignment strip search or visual body cavity inspection–that allowed the Court to determine class membership by reference to objective criteria. The *Mack* definition identified a particular group that was harmed during a particular time frame, in a particular location, in a particular way. By contrast, Plaintiffs proposed definition is impermissibly broad and lacks sufficient reference to objective criteria. The named Plaintiffs in this Complaint all suffered a different harm that resulted from different types of deprivations. For instance, Plaintiff Schilling was given "generic Tylenol" as a substitute for his prescription pain medication, while Plaintiff Telek was subjected to KCDC's twice daily insulin injection

policy even though his condition required more frequent attention. Plaintiff Schulker allegedly suffered the effects of unsanitary confinement in contracting a staph infection while on suicide watch.

These named plaintiffs are not part of a sufficiently definite group of inmates harmed in a particular way by a specific policy such as a discrete pre-arraignment strip search. The named Plaintiffs' allegations are so broad and vary in such significant degree that the Court cannot cull from the Complaint a readily identifiable class of plaintiffs. This Court rejects Plaintiffs' argument in full. Whether Plaintiffs seek to certify a mass tort class action or a police misconduct class action, the proposed class definition must be sufficiently definite to ascertain class membership and must not depend on a merits-based adjudication to determine inclusion.

### ii.    Rule 23(a) Requirements

The fatal flaw of Plaintiffs' ill-defined class inevitably dooms their ability to satisfy the Rule 23(a) prerequisites, which–out of an abundance of caution–the Court will analyze.

### 1.    Numerosity

Fundamentally, the numerosity requirement assesses whether joinder of all alleged class members would be impracticable, and impracticability depends on the facts and circumstances of each case. *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970). Numerosity cannot therefore be reduced to some strict numerical formula. Rather, the Court must inquire into whether Plaintiffs "have sufficiently demonstrated the existence of the numbers of persons they purport to represent." *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 337 (E.D. Ky. 2002). To do this, the Court should consider "reasonable inferences drawn from the facts before it," *Senter v. General Motors*, 532 F.2d 511, 523 (6th

14

Cir. 1976), but it cannot rely on "speculation or conclusory allegations" of the named plaintiffs.  *Gevedon*, 212 F.R.D. at 338.

Satisfying the numerosity requirement is impossible as long as the proposed class membership is unascertainable.  Because Plaintiffs' proposed definition is wholly dependent on a merits-based resolution of each potential class members' claims, the putative class is a mere apparition until judgment is rendered with respect to each individual claim.  This simply runs counter to the purpose of the class action as articulated in Rule 23 given its role as a procedural mechanism intended to foster efficient litigation.  Furthermore, it is a violation of Defendants' due process rights to force them to proceed against a class that remains illusory until a final judgment on the merits.  *Ball v. Union Carbide Corp.*, 212 F.R.D. 380, 391 (E.D. Tenn. 2002), *aff'd* 376 F.3d 554 (6th Cir. 2004).  The insufficiency of Plaintiffs' class definition therefore precludes satisfaction of the numerosity requirement.

### 2.    Commonality

The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation."  *Rumpke v. Rupmke Container Serv., Inc.*, 205 F.R.D. 204, 208 (S.D. Ohio 2004) (quoting *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976)).  While there only need be one common issue of law or fact it must be common to all class members.  *American Med. Sys.*, 75 F.3d at 1080.  "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."  *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).  The existence, though, of just any common question is inadequate because "at a sufficiently

abstract level of generalization, almost any set of claims can be said to display commonality. What is necessary is a common issue of resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to prisoners' serious medical needs. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6 th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Mere medical malpractice itself does not constitute a violation of the Eighth Amendment, *Estelle*, 429 U.S. at 106, nor do conditions of confinement that create "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (quoting *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992)). The Eighth Amendment is violated only when prison officials demonstrate deliberate indifference to inmates' serious medical needs. *Estelle*, 429 U.S. at 104. A claim of mere negligence, moreover, will not rise to the level of stating a claim; the Defendants' conduct "must demonstrate deliberateness tantamount to intent to punish." *Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted).

In this action, Plaintiffs have presented a common question of law: whether certain inmates at the Kenton County Detention Center suffered an unconstitutional deprivation of medical care. However, to resolve the legal issue presented the Court must delve into the specific facts of each inmate's incarceration and the medical needs relative to that inmate. These highly individualized factual inquires will predominate at trial and, thus, override the appropriateness of the class action with respect to the claims alleged in Plaintiffs' Complaint. (Doc. # 1). The different circumstances relative to each inmate, which may dictate different outcomes and different damages, militates against use of the class action to resolve the

16

matters before this Court. "[T]he commonality requirement will not be met ... if each class members' claim would necessitate an individualized determination of liability." 5 James Wm. Moore, Moore's Federal Practice § 23.23 [2]. Accordingly, Plaintiffs' have failed to satisfy this Rule 23 prerequisite.

### 3. Typicality

Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of the claims or defenses of the rest of the class. Typicality involves an inquiry into the relationship between the injury to the representative plaintiffs and the conduct affecting the entirety of the class such that the Court "may properly attribute a collective nature to the challenged conduct." *American Med. Sys.*, 75 F.3d at 1082 (quoting Herbert B. Newberg & Alba Conte, 1 *Newberg on Class Actions*, § 3-13, at 3-75, 76 (3d ed. 1992)). "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *American Med. Sys.*, 75 F.3d at 1082. Typicality ensures that a class representative will advance the interests of the entire class. In so doing, the typicality prong determines whether–despite the presence of common questions–each class members' claims involves distinctive factual or legal questions such that class certification would be inappropriate.

Here, Plaintiffs attempt to argue that they have been subjected to the same course of conduct claimed to be typical of the class: "the explicit or implicit practice or procedure of KCDC to deny medical attention and prescribed medication to incarcerated individuals." (Doc. # 9 at 16). The only specific policy to which Plaintiffs' make reference is KCDC's practice of administering insulin to diabetics twice daily. More generally, Plaintiffs' object

17

to an alleged implicit acquiescence among jailers and the facility's medical staff of denying

inmates adequate medical care and access to prescriptions.  However, this challenge is

entirely too broad to render the named Plaintiffs typical of the class.

For instance, Plaintiff Schulker was allegedly denied his anti-depressant medication

while incarcerated for a weekend at KCDC, while both Plaintiffs Schulker and Telek were

denied  insulin injections with the regularity their doctors prescribe; Plaintiff Schilling was

denied his prescription pain medication during his two-day stay, but was given generic

Tylenol as a substitute.  These facts alone warrant against typicality.  The facts relative to

each Plaintiff present varying degrees of deprivation, sufficiently distinct that they cannot be

said to be typical. To implicate an Eighth Amendment violation, Plaintiffs must establish that

Defendants' unnecessarily and wantonly inflicted pain in denying medical treatment.

*Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).  A prisoner *must* "allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

*Estelle*, 429 U.S. at 106.

The injuries among the named plaintiffs are also atypical.  Plaintiff Schilling contends

he was forced to endure excruciating pain because Defendants' denied him his Midrin

prescription.  Plaintiff Telek suffered from erratic sugar levels that would dip and spike as

a result of irregular insulin injections, exposing him to the risk of a diabetic coma.  Although

a diabetic as well, Plaintiff Schulker apparently did not suffer from dangerously erratic sugar

levels, but rather, contracted a staph infection on account of KCDC's allegedly unsanitary

confinement conditions.  On their face, it appears that Plaintiffs Schilling and Telek's

allegations are more accurately termed "denial of medical care" claims, while Schulker's

claim with respect to his staph infection is more properly a "conditions of confinement" claim.

*Napier v. Laurel Cnty.*, No. 6:06-368-DCR, 2008 WL 544468, at *11 (E.D. Ky. Feb. 26, 2008) ("typicality is also defeated by the range of alleged injuries and potential damages."). The Sixth Circuit has held that where the plaintiffs' claims depends on each individual's unique interactions with the defendant, the typicality requirement is lacking. *Sprague*, 133 F.3d at 399. That is certainly the case here. Accordingly, the typicality prerequisite under Rule 23 is not satisfied.

### 4. Adequate Representation

Rule 23(a)(4) requires that (1) the class representative have common interests with the unnamed members of the class, and (2) it appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 524-25. This requirement tests "whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent" and the experience of class counsel for the named plaintiffs. *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977). Whether representation will be adequate is dependent on the Court's determination with respect to typicality "because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *American Med. Sys.*, 75 F.3d at 1083. Accordingly, because typicality cannot be established for the putative class, as defined, adequacy of representation in this case is also lacking.

Finally, because Plaintiff fails to meet the threshold requirements of Rule 23(a), analysis of whether this action should proceed as a class action under one of the subsections of Rule 23(b) is superfluous and will not be considered. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 n.11 (6th Cir. 2004); Fed. R. Civ. P. 23(b) (stating that a

19

class action is only maintainable if Rule 23(a) is satisfied).

### III.    CONCLUSION

Plaintiffs' will not be able to establish the prerequisites of Rule 23(a) as the class is currently defined, thus, dismissal of the class claims alleged is appropriate.  The need for highly individualized inquiries to determine whether a KCDC inmate is even a member of the proposed class warrants a conclusion that the class mechanism is not an appropriate method for resolving the issues in controversy.

For the reasons previously stated, **IT IS ORDERED** that:

(1)    Defendants Kenton County, Kenton County Fiscal Court, Terry Carl and Deputy Baldwin's Motion to Dismiss Class Allegations and Claims (Doc. # 8) is hereby **GRANTED**;

(2)    Plaintiffs' class allegations are hereby **STRICKEN** from the Complaint (Doc. # 1, ¶¶ 5-9).

This 27th day January, 2011.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Covington\10-143 MOO dismiss class claims.wpd